UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD SUNDAY IFILL,

                Plaintiff,

v.

**DECISION AND ORDER**
06-CV-312S

WEINSTOCK, Medical Director, Five Points,
J.P. GREGOIRE, Medical Doctor, Five Points,

                Defendants.

## I. INTRODUCTION

Defendants move for summary judgment against Plaintiff Richard Sunday Ifill's remaining claim from his Third Amended Complaint filed August 22, 2008. Plaintiff, a former inmate at the Five Points Correctional Facility ("Five Points"), claims violations under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, as well as the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112-12117, and Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb *et seq.*, arising out of Defendants' alleged deliberate indifference to his serious medical needs.[1] Plaintiff seeks monetary damages and injunctive relief. Presently before this Court is Defendants' Motion for Summary

---

[1] Plaintiff's Third Amended Complaint additionally alleged that Defendants deprived him of his right to prosecute lawsuits in federal and state court by confiscating and destroying his legal work product and denying him sufficient resources to litigate his claims, violated his First Amendment rights by confiscating or preventing him from acquiring religious materials, and engaged in retaliatory and discriminatory actions including fabricating misbehavior reports. (Third Am. Comp., Aug. 22, 2008, Docket No. 20.) The Honorable Michael A. Telesca, United States District Judge, dismissed these claims with prejudice, and permitted only the medical indifference claims against Defendants Gregoire and Weinstock to go forward. (Docket No. 25.)

Judgment.[2] For the following reasons, Defendants' motion is granted and Plaintiff's Complaint is dismissed.

## II. BACKGROUND

### A. Facts[3]

The facts in this case detail an extensive and complicated 3-year history of Plaintiff's medical treatment. Plaintiff's own submissions include a lengthy, handwritten, single-spaced, 15-page affidavit, as well as a similarly written 32-page memorandum of law, which includes various other factual allegations. Defendants, for their part, have submitted a 178 paragraph statement of facts that laboriously documents each of Plaintiff's numerous medical visits. Parsing the most relevant material from those submissions shows that Plaintiff is a former Five Points inmate suffering from various chronic and complex medical problems. These conditions included atrophy of the legs, degenerative spinal disease, scoliosis of the lumbar spine, avascular necrosis of the hips, and an enlarged heart. (Defs.' Stmt. ¶ 8, Docket No. 66.) Defendants are doctors at Five Points who provided

---

[2] In support of their Motion for Summary Judgment, Defendants filed the following documents: a memorandum of law, a Rule 56 Statement of Undisputed Facts, the Declaration of J.P. Gregoire with supporting exhibit, the Declaration of Daniel Weinstock, and the Declaration of George Michael Zimmermann. (Docket Nos. 66, 67, 71.) In opposition, Plaintiff filed an affidavit, and a memorandum in opposition with supporting exhibits. (Docket Nos. 69, 70.)

[3] Defendants have submitted a statement of facts accompanying their Motion for Summary Judgment. Pursuant to Local Rule 56(a)(2) a nonmoving party must submit in their papers opposing a motion for summary judgment a response to each numbered paragraph in the moving party's statement of facts as to which it is contended there exists a genuine issue to be tried. Plaintiff attempted to challenge, with specificity, several paragraphs of Defendants' statement, but stopped differentiating among the different paragraphs upon reaching Defendants' paragraph 18. (See Pl.'s Mem. 14, Docket No. 70.) Although under this District's local rules the remaining 160 paragraphs of Defendants' statement would be considered undisputed and hence admitted, see Local Rule 56(a)(2), given Plaintiff's *pro se* status, this Court will strive to more broadly interpret Plaintiff's challenges to Defendants' statement wherever there is a clear inconsistency between Defendants' facts and Plaintiff's allegations.

treatment to Plaintiff during the time-period relevant to this case. Dr. J.P. Gregoire is a physician licensed to practice medicine employed at the time by the Department of Correctional Services at Five Points. (Gregoire Decl. ¶ 1, August 16, 2011, Docket No. 67.) Dr. Daniel Weinstock, also a physician licensed to practice medicine and then employed by the Department of Correctional Services, was promoted to the position of Facility Health Services Director at Five Points in June 2006. (Weinstock Decl., August 19, 2011, Docket No. 66.)[4]

Relevant to Plaintiff's Third Amended Complaint, Plaintiff was incarcerated in Five Points from December 5, 2005 to August of 2008. (Defs.' Stmt. ¶ 6.) Prior to arriving at Five Points, Plaintiff received treatment at the Walsh Regional Medical Unit ("Walsh") where he was prescribed various drugs to treat his pain symptoms, including Percoset and Ultram. (Defs.' Stmt. ¶¶ 10, 11.) Upon arriving at Five Points, Plaintiff's treatment was changed and brought in line with Five Points policy, which prohibited prescribing narcotics such as morphine or Percocet for the treatment of pain. (Gregoire Decl. ¶ 10.)

On December 9, 2005, Dr. Weinstock prescribed Plaintiff a version of the drug Neurontin. (Defs.' Stmt. ¶ 40.) Plaintiff contends that this medication failed to alleviate his pain. (Defs.' Stmt. ¶ 44.) Plaintiff moreover refused to take the Neurontin in a crushed form because Defendants would not prepare the drug in Plaintiff's presence and Plaintiff believed he had previously been given the wrong medication. (Defs.' Stmt. ¶ 46.) In addition to Neurontin, Plaintiff was prescribed various other drugs to treat his symptoms, including pain. These included Phenylgesic, Northplylline, Flexeril, Lyrica, Felden, and,

---

[4] The Department of Correctional Services has since been merged with the Division of Parole, forming a new agency – the Department of Corrections and Community Supervision.

eventually, Ultram. (Defs.' Stmt. ¶¶ 39, 40, 49, 62, 109, 110, 140.) Plaintiff alleges that neither these prescriptions, nor other treatment he received, alleviated his pain. (Ifill Aff. ¶ 8.)

In addition to these prescriptions, Plaintiff was also referred to various specialists for consultation. These included a neurologist, Dr. Patel, (Defs.' Stmt. ¶ 30), as well as a physical therapist (Defs.' Stmt. ¶¶ 30, 81.) Plaintiff alleges that Defendants ignored Dr. Patel's recommendations that Plaintiff be prescribed the medications he formerly received at Walsh, and instead continued to prescribe Plaintiff medications that had proven ineffective. Relevant to this, Defendants recorded a concern that Plaintiff's requests for stronger drugs were an indication of drug-seeking behavior. (Gregoire Decl. ¶ 10.)

Defendants also met with Plaintiff on several occasions, and Defendant appears to have been in contact with medical personnel on a daily basis. (Defs.' Stmt. ¶¶ 21, 17, 84, 103.) On March 6, 2007, the possibility of a live-in assistant was discussed by Dr. Gregoire with Plaintiff. (Defs.' Stmt. ¶ 108.) Plaintiff alleges that he needed a live-in assistant for help transferring into and out of his wheel chair, bed, and shower, as well as to use the toilet. (Defs.' Stmt. ¶ 149.) Dr. Gregoire granted Plaintiff an assistant to help clean his cell a few times a week, but denied the help of a live-in assistant out of security concerns. (Gregoire Decl. ¶ 12; Defs' Stmt. ¶ 165.)

**B.     Procedural History**

Plaintiff filed a Third Amended Complaint on August 22, 2008. (Docket No. 20.) In that complaint, Plaintiff alleged four causes of action against over a dozen defendants. Of these, three claims were dismissed by Judge Telesca in an Order dated March 18, 2009. (Docket No. 25.) The only claim allowed to go forward was Plaintiff's medical treatment

claim. This claim was further narrowed to include only Defendants Gregoire and Weinstock. Plaintiff's claims against all other defendants were dismissed. Plaintiff filed an interlocutory appeal which was denied as moot on July 27, 2009. (Docket No. 31.)

Following the close of discovery on December 31, 2010, Defendants filed the present Motion for Summary Judgment on August 30, 2011. Plaintiff filed a timely response, and Defendants did not submit a reply memorandum. The parties' briefs were deemed submitted on October 17, 2011, at which time this Court took Defendants' motion under advisement without oral argument.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ,. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson, 477 U.S. at 248. In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. See Celotex

Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

At this stage, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Thus, summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford, 316 F.3d at 354.

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970). However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

**B.    Denial of Medical Treatment Claims**

Plaintiff claims that Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Pl.'s Mem. 4.) A prisoner's claim that he was intentionally denied medical treatment is cognizable under the Eighth Amendment and § 1983. Estelle v. Gamble, 429 U.S. 97, 104, 106, 97 S. Ct. 285, 291,

292, 50 L. Ed.2d 25 (1976).[5] In making such a claim, a plaintiff must satisfy both an objective and a subjective component. The objective component requires plaintiff to show that he suffered from a "sufficiently serious" medical condition. See Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). The subjective component "requires a showing that the defendant 'had the necessary level of culpability, shown by actions characterized by 'wantonness'' in light of the particular circumstances surrounding the challenged conduct." Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000) (quoting Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)).

Defendants do not appear to challenge the fact that Plaintiff's medical conditions were serious. (See Defs.' Mem. 5; Defs.' Stmt. ¶ 7; Gregoire Decl. ¶ 8.) Accordingly, the only matter that must be resolved is whether Plaintiff can identify evidence creating a genuine issue of material fact as to Defendants' mental state.

"An official acts with the requisite deliberate indifference when he 'knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

---

[5] This Court notes that Plaintiff also brings this claim under 42 U.S.C. §§ 1985 and 1986, as well as the ADA. However, Plaintiff does not refer to any specific section of the ADA. Nor does Plaintiff attempt to show how this claim would fall under any provision other than § 1983. Indeed, Plaintiff relies on the very language this Court has previously employed in Plaintiff's former case, Ifill v. Goord, 3-CV-355S. In any case, Plaintiff has only made conclusory allegations concerning Defendants' participation in a conspiracy insufficient to sustain a claim under § 1985. See Thomas v. Roach, 165 F.3d 137, 147 (2d Cir. 1999) (holding § 1985(3) claim not viable where plaintiff's assertions were vague, conclusory, and failed to establish existence of agreement among defendants to deprive plaintiff of constitutional rights). Further, "[a] claim under section 1986 . . . lies only if there is a viable conspiracy claim under section 1985." Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994). Finally, Plaintiff's ADA claim is also not viable. An inmate cannot bring an ADA suit premised on individual liability, and may only sue a public agency or officer acting in his official capacity if the conduct in question would also constitute a violation under the Eighth Amendment. Hodges v. Wright, No. 9:10-CV-0531 (GLS/GHL), 2011 WL 5554866, at *8 (N.D.N.Y. Sept. 29, 2011). As discussed later in this opinion, Plaintiff's Eighth Amendment claim fails. Accordingly, his ADA claim must also be dismissed.

and he must also draw the inference.'" Brown v. Picarelli, No. 96 Civ. 1222, 2003 WL 1906180, at *6 (S.D.N.Y. Apr. 15, 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed.2d 811 (1994)). Plaintiff alleges that Defendants continued prescribing him pain medication they knew would not relieve his pain and failed to provide him with a live-in cell assistant. Defendants respond by citing the extensive medical record demonstrating Defendants' continued attempts to provide Plaintiff care, even in the face of Plaintiff's often hostile attitude.

The first part of Plaintiff's claim, that he was denied the drugs necessary to treat his pain symptoms, is virtually identical to a claim Plaintiff has previously brought, and this Court dismissed, in Ifill v. Goord, No. 03-CV-355S, 2007 WL 2874413 (W.D.N.Y. Sept. 27, 2007). In that case, Plaintiff alleged that he required narcotic pain medication to treat his chronic neck and back pain. Id. at *4. Similarly here, Plaintiff contends that he required stronger pain medication for his various conditions. This Court held that Plaintiff's claims amounted to no more than a "mere disagreement" with Defendants' treatment decision. Id. at *5. Although the Second Circuit Court of Appeals vacated that decision in part, this Court's decision to dismiss Plaintiff's medical treatment claim remains undisturbed. See Ifill v. Goord, 326 Fed. Appx. 625 (2d Cir. 2009) (summary order).

As in that case, here this Court finds that Plaintiff continues to allege no more than "mere disagreement" with Defendants' prescriptions. "[M]ere disagreement over the proper treatment does not create a constitutional claim." Chance, 143 F.3d at 703. Moreover, although Plaintiff claims that Defendants ignored the opinion of Dr. Patel who allegedly recommended that Plaintiff be provided with different medication, a Plaintiff is not entitled to the treatment of his choice. Id. at 702. Plaintiff's demand for stronger pain medications

and Defendants' unwillingness to prescribe them does not create an Eighth Amendment claim. See Guarneri v. Wood, No. 08-CV-792 (TJM/DRH), 2011 WL 4592209, at *13 (N.D.N.Y. Sept. 2, 2011) ("Defendants regularly offered [plaintiff] non-narcotic pain medication . . . . [Plaintiff]'s complaints about the type of medication given to him for pain again amounts to a disagreement over treatment, which is insufficient to allege a constitutional violation.").

Plaintiff also has not shown that Defendants knew that he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. See Farmer, 511 U.S. at 847. In fact, the record reflects that Defendants continually tried to improve Plaintiff's condition by prescribing him a series of different medications. (Defs.' Stmt. ¶¶ 39, 40, 49, 62, 109, 110, 140.) Although Plaintiff claims these drugs were ultimately ineffective, Defendants' efforts to treat Plaintiff's symptoms work against finding the necessary mental state. Indeed, far from disregarding Plaintiff's pain, Defendants' continued efforts to treat Plaintiff's symptoms reflect their desire to alleviate his condition. Plaintiff was provided with at least two new wheelchairs while at Five Points, received an MRI for his spine and neck injury, received physical therapy, and was referred to specialists by Defendants, who also arranged for Plaintiff to have eye surgery, and provided him with a new back brace, as well as assigning a cell cleaning assistant. (Defs.' Stmt. ¶¶ 20, 24, 27, 66, , 91, 101, 168.) Although Plaintiff asserts that his claim is not about egg crate mattresses, back support, or wheelchairs (Pl.'s Mem. 24), Defendants efforts in procuring these for Plaintiff weigh against Plaintiff's assertion that Defendants acted with deliberate indifference. See Murray v. Ramineni, No. 08-CV-809 (DNH/DRH), 2011 WL 1315777, at

*20 (N.D.N.Y. Mar. 3, 2011) ("[T]he continuing treatment that [plaintiff] received after he broke his ankle also militates against contentions of deliberate indifference.").

Even if this Court assumes that Defendants did err, and incorrectly treated Plaintiff, Plaintiff would still be unable to show that Defendants possessed the requisite state of mind to deny summary judgment. Although Plaintiff claims that "adequate medical care treatment, means that the treatment 'works,'" (Ifill Mem. 9), the fact is that mere negligence does not show deliberate indifference. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) ("[T]he Eighth Amendment is not a vehicle for bringing medical malpractice claims . . . [and] not every lapse in prison medical care will rise to the level of a constitutional violation."). Aside from Plaintiff's conclusory allegations that Defendants' were acting intentionally, Plaintiff has presented no other evidence from which to infer that Defendants were intentionally denying Plaintiff necessary medications.

Finally, the fact that Plaintiff resisted treatment on numerous occasions, precludes him from now bringing a deliberate indifference claim. Jones v. Smith, 784 F.2d 149, 151-52 (2d Cir. 1986) (affirming district court's dismissal of Eighth Amendment claim where Plaintiff constantly declined to be treated by prison doctors); Mendoza v. Schult, Civ. No. 9:09-CV-466 (LEK/RFT), 2011 WL 4592381, at *5 (N.D.N.Y. Sept. 14, 2011) (listing cases). Here, Plaintiff admits to refusing the Neurontin in crushed form because he was not allowed to observe it being crushed. (Defs.' Stmt. ¶ 46.) Plaintiff also resisted physical examinations, preventing a thorough examination of his ailments, and refused to see outside experts, including neurologists. (Defs.' Stmt. ¶¶ 54, 122, 143.) Having resisted treatment, Plaintiff is not now in a position to charge Defendants with being deliberately

indifferent to his medical conditions.[6]

The same analysis applies to Plaintiff's demand for a live-in assistant. Plaintiff has not demonstrated that this denial amounted to anything more than a disagreement with his physicians, who determined that he only required assistance in cleaning his cell once a week. See Murray, 2011 WL 1315777, at *19 ("To the extent that [plaintiff] contends that he . . . required the additional assistance of ambulatory devices . . . such allegations constitute no more than a difference of opinion regarding treatment."). As before, the fact that Defendants did provide Plaintiff assistance, not only in the form of an inmate cleaning assistant but also assigning him a wheelchair and corresponding wheelchair accessible cell, show that Defendants did not act with the kind of deliberate indifference necessary to establish liability.[7]

Taken individually or together, these various grounds more than suffice to grant Defendants' Motion for Summary Judgment. Plaintiff has failed to present anything more than conclusory allegations concerning Defendants' state of mind. Further, the record reflects that Defendants provided Plaintiff with extensive treatment which Plaintiff resisted at various turns. Plaintiff has, at most, shown that Defendants were negligent in failing to

---

[6] This Court notes that Plaintiff's recalcitrant attitude is reflected in his submissions. For example, his affidavit accuses Dr. Gregoire of inexperience and of not knowing how to treat pain because he was "a doctor that works with women giving birth to children." (Ifill Aff. ¶ 13.) Aside from the inherent fallacy in that statement, Plaintiff also resists this Court's own instructions, repeatedly raising claims that have already been dismissed, including claims that Defendants interfered with his ability to litigate this action, conspired with their superiors, and destroyed Plaintiff's legal documents.

[7] Plaintiff's submissions suggest an additional reason why Defendants' could not be held liable. Plaintiff claims that Defendants "went along with what their boss wanted them to do" and the medical notes reveal that Plaintiff was "not eligible for a cell assistant due to past crimes while in prison." (Ifill Aff. ¶ 3.) Although Plaintiff asserts that he committed no such crimes, this nonetheless reflects that it was Five Points' administration, not Defendants, that made the final decision that a live-in assistant be denied.

provide him with other medication. This is not enough to support Plaintiff's claim of deliberate indifference to serious medical needs. Accordingly, Defendants' Motion for Summary Judgment will be granted.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

### V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 66) is GRANTED.

FURTHER, that the Clerk of the Court is directed to take the steps necessary to close this case.

SO ORDERED.

Dated:    January 16, 2012
           Buffalo, New York

                                                    /s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                        Chief Judge
                                               United States District Court